

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RICHARD PANICE, ) </br> ) </br> Plaintiff, ) </br> ) </br> v. ) </br> ) 06 C 6418 </br> EXELON CORP., a Pennsylvania ) </br> corporation, COMMONWEALTH ) </br> EDISON CO., an Illinois corporation, ) Judge Ronald A. Guzmán </br> individually and d/b/a EXELON ) </br> GENERATION, EXELON ) </br> GENERATION CO., LLC, a ) </br> Pennsylvania limited liability company, ) </br> and EXELON BUSINESS SERVICES ) </br> CO., a Pennsylvania corporation, and ) </br> LOCAL UNION NO. 15 OF THE ) </br> INTERNATIONAL BROTHERHOOD ) </br> OF ELECTRICAL WORKERS, ) </br> ) </br> Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff has sued Exelon Corp., Exelon Generation Co., LLC, Exelon Business Services Co., Commonwealth Edison ("ComEd") and Local 15 of the International Brotherhood of Electrical Workers ("the Union") for their alleged breaches of section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. The case is before the Court on the parties' cross motions for summary judgment pursuant to Federal Rule of Civil Procedure ("Rule") 56. For the reasons set forth below, the Court grants defendants' motions and denies plaintiff's motion.

## Facts[1]

Panice has been employed by ComEd Since July 29, 1985 and currently works as an overhead electrician out of its Sterling, Illinois station. (Defs.' Resp. Pl.'s LR 56.1(a)(3) Stmt. ¶ 3; Union's Resp. Pl.'s LR 56.1(a)(3) Stmt. ¶ 3; Pl.'s Resp. Defs.' Jt. 56.1(a)(3) Stmt. ¶ 2.[2]) He is a member of the Union, which is the bargaining representative for ComEd's employees. (Pl.'s Resp. Defs.' Jt. LR 56.1(a)(3) Stmt. ¶¶ 2-3.) ComEd and the Union are parties to a collective bargaining agreement ("CBA") that governs Panice's wages, hours and working conditions. (*Id.* ¶ 4.)

Among other things, the CBA sets forth the process for promoting overhead electricians like Panice to crew leader positions. (Defs.' Jt. App., App. D, CBA Art. III; *id.*, 2/19/96 Letter from Brown to Starr; *id.*, Ex. 3.) The agreement requires ComEd to post available positions and award them to the most senior of the qualified applicants. (*Id.*)

Though not mandated by the terms of the CBA, in 2003 ComEd and the Union agreed that "[a]ll future laterals & promotional opportunities will be done by Conference Calls." (Defs.' Resp. Pl.'s LR 56.1(a)(3) Stmt. ¶ 13; Union's Resp. Pl.'s LR 56.1(a)(3) Stmt. ¶ 13; Pl.'s Resp. Defs.' Jt. LR 56.1(a)(3) Stmt. ¶ 27.)

On September 6, 2005, ComEd announced that eighteen overhead crew leader promotions were available in various Illinois locations. (Defs.' Jt. App., App. I, Posting #P050807.) The posting said that all applications had to be submitted by September 19, 2005 and the bidding conference call would be held at 7:30 a.m. on September 22, 2005. (*Id.*)

---

[1]Unless noted otherwise, the following facts are undisputed.

[2]This document is incorrectly titled "Plaintiff's Memorandum of Law in Support of Motion for Summary Judgment."

2

Panice timely submitted an application. (Defs.' Resp. Pl.'s LR 56.1(a)(3) Stmt. ¶ 8; Union's Resp. Pl.'s LR 56.1(a)(3) Stmt. ¶ 8.)

On September 21, 2005, Panice reported to work at 10:30 a.m. and worked continuously until 4:30 a.m. the next day, September 22, 2005. (Defs.' Resp. Pl.'s LR 56.1(a)(3) Stmt. ¶ 7; Union's Resp. Pl.'s LR 56.1(a)(3) Stmt. ¶ 7.) According to the CBA, the eighteen-hour work day entitled Panice to "an eight hour rest period before . . . return[ing] to work." (Pl.'s Resp. Defs.' Jt. LR 56.1(a)(3) Stmt. ¶ 22.)

Though he was aware that the promotion conference call was scheduled for 7:30 a.m. on September 22, Panice slept through it. (*Id.* ¶ 18; Defs.' Resp. Pl.'s LR 56.1(a)(3) Stmt. ¶ 10; Union's Resp. Pl.'s LR 56.1(a)(3) Stmt. ¶ 10.) If Panice had participated in the call, he would have received the crew leader position he wanted. (Defs.' Resp. Pl.'s LR 56.1(a)(3) Stmt. ¶¶ 11, 15; Union's Resp. Pl.'s LR 56.1(a)(3) Stmt. ¶¶ 11, 15.)

On October 18, 2005, the Union filed a grievance on Panice's behalf that said: "While on paid rest, the grievant was unable to be on the conference call for the crewleader posting. We are asking for the company to change this method for short term absences." (*See* Pl.'s LR 56.1(a)(3) Stmt., Ex. 5, Step One Grievance.) ComEd denied the grievance and the Union's two subsequent appeals on the grounds that denying Panice a promotion because he failed to participate in the conference call did not violate the CBA. (*See id.*, Exs. 5-7, Step One-Three Grievances.) The Union decided not to take Panice's grievance to arbitration. (Pl.'s Resp. Defs.' Jt. LR 56.1(a)(3) Stmt. ¶ 42.)

Panice says ComEd's requirement that promotion applicants participate in conference calls, even if they are on a rest period, violates the CBA and that the Union, by failing to pursue that grievance, violated its duty of fair representation.

3

## Discussion

To prevail on a summary judgment motion, "the pleadings, the discovery and disclosure materials on file, and any affidavits [must] show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). At this stage, we do not weigh evidence or determine the truth of the matters asserted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). We view all evidence and draw all inferences in favor of the non-moving party. *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000). Summary judgment is appropriate only when the record as a whole establishes that no reasonable jury could find for the non-moving party. *Id.* "In considering cross-motions for summary judgment, we are obliged to view all facts and draw all reasonable inferences in a light most favorable to the party against whom the motion under consideration is made." *Gazarkiewicz v. Town of Kingsford Heights*, 359 F.3d 933, 939 (7th Cir. 2004).

The claims against Exelon Corp., Exelon Generation Co. LLC, and Exelon Business Services Co. are easily dispatched. The parties agree that those defendants are entities separate from ComEd and that ComEd, which is Panice's employer, is the only entity that is a party to the CBA. (Pl.'s Resp. Def. Cos.' Add'l Facts Supp. Mot. Summ. J. ¶¶ 1-6; Pl.'s Resp. Defs.' Jt. LR 56.1(a)(3) Stmt. ¶ 4.) Because the record establishes that Exelon Corp., Exelon Generation Co., LLC, and Exelon Business Services Co. are not Panice's employer or parties to the CBA, they cannot be held liable under section 301 of the LMRA. *See* 29 U.S.C. § 185 (authorizing suits in federal court "for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce").

That leaves Panice's section 301 claims against ComEd and the Union, a so-called hybrid 301 action, because Panice both charges his employer with breaching the CBA and the Union with breaching its duty of fair representation. *Crider v. Spectrulite Consortium, Inc.*,

4

130 F.3d 1238, 1241 (7th Cir. 1997). In such cases, the Court does not address the contract claim against the employer unless and until plaintiff shows that the Union breached its duty of fair representation. *Thomas v. United Parcel Serv., Inc.*, 890 F.2d 909, 915 (7th Cir. 1989).

The Union breached its duty of fair representation only if its conduct with respect to Panice was "arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes*, 386 U.S. 171, 190 (1967). Panice contends that the Union acted arbitrarily when it failed to: (1) assert in his grievance that the conference call requirement violated the CBA's rest period requirement and criteria for promotion; and (2) take his grievance to arbitration.

The Union's actions were arbitrary "only if, in light of the factual and legal landscape at the time . . . , [its] behavior [was] so far outside a wide range of reasonableness, as to be irrational." *McLeod v. Arrow Marine Transp., Inc.*, 258 F.3d 608, 613 (7th Cir. 2001) (quotations omitted). The law and the facts applicable to this case establish that the Union's actions were not.

The CBA states that "[a]n employee who has worked more than sixteen hours continuously . . . shall . . . be entitled to an eight hour rest period before [he] returns to work," but it does not define the term "work." (*See* Defs.' Jt. App., App. D, CBA Art. IV ¶ 15.) In similar contexts, however, courts have categorized as "work" only those activities that primarily benefit the employer. *See IBP, Inc. v. Alvarez*, 546 U.S. 21, 25 (2005) (noting that work, for purposes of the Fair Labor Standards Act, is "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business." (quotation omitted)); *Leahy v. City of Chi.*, 96 F.3d 228, 231 n.2 (7th Cir. 1996) ("An employee is considered to be completely relieved from duty . . . when the employee's time is not spent predominantly for the benefit of the employer."). It is undisputed that ComEd did not require any employee to participate in a bidding conference

5

call. Rather, employees had to do so only if they wanted to secure a promotion. Because Panice's conference call participation was optional and primarily, if not entirely, for his own benefit, the Union's failure to assert that his participation was "work" from which he was excused during his rest period was not irrational.

Panice's second argument is that the Union breached its duty by failing to assert that the conference call requirement violated the CBA's provision on promotions. The CBA sets forth two criteria for crew leader promotions: seniority and ability. (Defs.' Jt. App., App. D, CBA Art. III.; *id.*, 2/19/96 Letter from Brown to Starr at 9; *id.*, Ex. 3.) Panice says that requiring applicants to participate in the conference call imposes a third criterion not contemplated by the contract.

The Court disagrees. The CBA is silent as to the specific procedures to be followed for bidding on crew leader promotions. (*See generally*, Defs.' Jt. App., App. D, CBA.) Because the Court cannot, from the CBA's plain meaning, "ascertain how [it] applies to [this] particular set of circumstances," we "may consult evidence about . . . the parties' course of dealing to throw light on the question." *Alexander v. City of Evansville*, 120 F.3d 723, 727 (7th Cir. 1997). It is undisputed that, in September 2005, ComEd and the Union had an established and agreed practice of determining crew leader promotions by conference call. (*See* Defs.' Jt. App., App. R, Guidelines for Filling Physical Jobs in Commercial Div. ¶ 19; Defs.' Resp. Pl.'s LR 56.1(a)(3) Stmt. ¶ 13; Union's Resp. Pl.'s LR 56.1(a)(3) Stmt. ¶ 13; Pl.'s Resp. Defs.' Jt. LR 56.1(a)(3) Stmt. ¶ 27.) Given that undisputed course of dealing, the Union's failure to assert that the conference call procedure violated the CBA was not irrational.

Panice's last argument, that the Union breached its duty by failing to take his conference call grievance to arbitration, suffers the same fate. It is well established that the Union's duty of fair representation does not require it to take every grievance to arbitration.

6

*Vaca*, 386 U.S. at 191. Rather, the duty "requires the union to provide as much assistance in the processing of a grievance as the merits of the grievance demand." *Thomas*, 890 F.2d at 920. For the reasons discussed above, the Union's belief that Panice's grievance was not sufficiently meritorious to warrant the time and expense of arbitration was wholly justified. Its decision not to arbitrate did not, therefore, violate its duty of fair representation.

The Court's determination that the Union did not breach its duty of fair representation to Panice also dooms his contract claim against ComEd. *See Crider*, 130 F.3d at 1241 (stating that in hybrid 301 suits "the employee's claim against the union and his claim against the employer are interlocked: neither claim is viable if the other fails."). Therefore, ComEd is entitled to a judgment as a matter of law on Panice's section 301 claim.

## Conclusion

For the reasons set forth above, there is no genuine issue of material fact on the claims Panice asserts against defendants, and each is entitled to judgment as a matter of law. Therefore, the Court denies plaintiff's summary judgment motion [doc. no. 52] and grants the summary judgment motions of the Union [doc. 46] and Exelon Corp., Exelon Generation Co., LLC, Exelon Business Services Co. and ComEd [doc. no. 49]. This case is terminated.

SO ORDERED.         ENTERED: 1/24/08

HON. RONALD A. GUZMAN
United States District Judge

7